UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

JACK DANIEL'S PROPERTIES, INC.,

    Plaintiff,

v.

J&M CONCEPTS, LLC, and
POPCORN SUTTON DISTILLING, LLC

    Defendants

Docket No._ _____
Judge: _____
Magistrate: _____

## COMPLAINT

Plaintiff Jack Daniel's Properties, Inc. ("JDPI"), for its complaint against defendants J&M Concepts, LLC ("J&M") and Popcorn Sutton Distilling, LLC ("Distilling") (jointly "Defendants"), alleges as follows:

### PARTIES

1. Plaintiff JDPI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in San Rafael, California.

2. Upon information and belief, defendant J&M is a Nevada limited liability company with its principal place of business in Nashville, Tennessee.

3. Upon information and belief, defendant Distilling is a Delaware limited liability company with its principal place of business in Nashville, Tennessee.

### JURISDICTION AND VENUE

4. This is an action to redress Defendants' infringement of JDPI's federally-registered trademarks, in violation of 15 U.S.C. § 1114(1); Defendants' unfair competition, in violation of 15 U.S.C. § 1125(a)(1); and Defendants' trademark infringement and unfair

competition in violation of the laws of the State of Tennessee, all arising from Defendants' marketing and sale of Defendants' Popcorn Sutton's Tennessee White Whiskey in a trade dress that is confusingly similar to the iconic trade dress for Jack Daniel's Tennessee whiskey. The products at issue are shown below:



5. The Court has jurisdiction over the subject matter of JDPI's claims for relief arising under the United States Trademark Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). The Court has original or supplemental jurisdiction over the subject matter of JDPI's claims for relief under the laws of the State of Tennessee pursuant to 28 U.S.C. §§ 1338(b) and 1367.

6. The Court has personal jurisdiction over Defendants because they reside in and transact business in the State of Tennessee. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendants all reside in this Judicial District.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Jack Daniel's Tennessee Whiskey Trademarks and Trade Dress

7. From a time long prior to Defendants' acts of trademark infringement and unfair competition complained of herein, JDPI's predecessors-in-interest and licensees have sold Jack Daniel's Tennessee whiskey, prepared alcoholic cocktails, and other goods and services in the United States. Jack Daniel's Tennessee whiskey was first sold in 1866 and has been sold continuously since then, except during the period of national Prohibition. Jack Daniel's Tennessee whiskey is one of the oldest, longest-selling, and most iconic consumer products in the history of the United States. JDPI owns and licenses the use of the trademarks and trade dress for Jack Daniel's Tennessee whiskey.

8. From a time long prior to Defendants' acts of trademark infringement and unfair competition complained of herein, JDPI's predecessors-in-interest and licensees have sold Jack Daniel's Tennessee whiskey in the United States in packaging featuring a distinctive and iconic trade dress consisting of a combination of a square-shaped bottle with angled shoulders that house a raised signature on four sides, and beveled corners, and labeling with a white-on-black color scheme and filigree designs (the "Jack Daniel's Trade Dress"). A depiction of the Jack Daniel's Trade Dress is attached hereto as **Exhibit 1**. Although minor changes have been made in the Jack Daniel's Trade Dress over the years, it has conveyed a consistent commercial impression for decades. Jack Daniel's Tennessee whiskey bearing the Jack Daniel's Trade Dress is currently the best-selling whiskey in the United States. The Jack Daniel's Trade Dress is famous in the United States for whiskey and became famous prior to the commencement of Defendants' acts of infringement and unfair competition complained of herein.

9. JDPI owns United States Trademark Registration No. 4,106,178 (the "'178 Registration") for certain elements of the Jack Daniel's Trade Dress consisting of the three-

dimensional configuration of a square shape bottle container for distilled spirits. A copy of the Certificate of Registration of this mark is attached hereto as **Exhibit 2**. The '178 Registration is *prima facie* evidence of the validity and non-functionality of the registered mark and of JDPI's exclusive right to use the registered mark in commerce in connection with distilled spirits. JDPI also owns United States Trademark Registration No. 4,106,179 (the "'179 Registration") for various other elements of the Jack Daniel's Trade Dress for distilled spirits. A copy of the Certificate of Registration of this mark is attached hereto as **Exhibit 3**. The '179 Registration is *prima facie* evidence of the validity and non-functionality of the registered mark and of JDPI's exclusive right to use the registered mark in commerce in connection with distilled spirits.

10. The Jack Daniel's Trade Dress is non-functional and is inherently distinctive or, alternatively, acquired distinctiveness prior to the commencement of Defendants' acts complained of herein through extensive sales, advertising, and promotion of Jack Daniel's Tennessee whiskey bearing the Jack Daniel's Trade Dress, extensive public consumption of Jack Daniel's Tennessee whiskey bearing in the Jack Daniel's Trade Dress, the appearance of Jack Daniel's Tennessee whiskey bearing the Jack Daniel's Trade Dress in dozens of motion pictures and television programs, and extensive consumer recognition of the Jack Daniel's Trade Dress and association of the Jack Daniel's Trade Dress with Jack Daniel's Tennessee whiskey.

11. Various other products, including liqueur and prepared alcoholic cocktails, are currently part of the product line headed by Jack Daniel's Tennessee whiskey. Most recently, in October 2012, JDPI's licensee Brown-Forman Corporation announced that a Jack Daniel's white whiskey (an unaged Tennessee rye whiskey) would be introduced in small quantities in 2013. The product is now available in various outlets. A depiction of this product is attached hereto as **Exhibit 4**. JDPI's licensee has also used the elements of the Jack Daniel's Trade Dress in

connection with various commemorative editions of Jack Daniel's Tennessee whiskey. Depictions of various recent commemorative whiskey editions are attached hereto as **Collective Exhibit 5**.

### Defendants' Popcorn Sutton's Trade Dress Infringement and Unfair Competition

12. Defendants produce and sell Popcorn Sutton's Tennessee white whiskey. Popcorn Sutton's Tennessee white whiskey is named after Marvin "Popcorn" Sutton ("Sutton"), an Appalachian moonshiner who committed suicide in 2009 rather than report to federal prison to serve a sentence following his conviction on various offenses relating to moonshine production. Upon information and belief, J&M advertises, promotes, and markets the whiskey and owns the trade dress discussed below, and Distilling distills and bottles the whiskey.

13. Popcorn Sutton's Tennessee white whiskey was initially sold in a transparent Mason jar packaging. A depiction of that packaging is attached hereto as **Exhibit 6**. Upon information and belief, the initial sale of Popcorn Sutton's Tennessee white whiskey in Mason jar packaging was intended to honor the heritage of Sutton's moonshine. At some point in 2012, Defendants developed new packaging for Popcorn Sutton's Tennessee whiskey that embodied a dramatically different trade dress for the product. Upon information and belief, Popcorn Sutton's Tennessee white whiskey was first sold in this new packaging toward the end of 2012 or the beginning of 2013. This new packaging embodies trade dress featuring a combination of a square-shaped bottle with angled shoulders that house a signature and beveled corners, and labeling with a white-on-black color scheme, filigree designs, and a font style reminiscent of that of the Jack Daniel's Trade Dress (the "New Popcorn Sutton's Trade Dress"). A depiction of the New Popcorn Sutton's Trade Dress is attached hereto as **Exhibit 7**. Defendants' master distiller Jamey Grosser has attributed the change in packaging bearing the New Popcorn Sutton's Trade

5

Dress to a longstanding desire of Sutton to sell his whiskey in eye-catching packaging once he could afford to do so, quoting Sutton as saying "My whiskey is too good to be in a damn jar."

14. When Defendants began the use of the New Popcorn Sutton's Trade Dress for their Tennessee white whiskey, they were aware of the Jack Daniel's Trade Dress and, upon information and belief, employed the New Popcorn Sutton's Trade Dress to trade upon the goodwill in the Jack Daniel's Trade Dress.

15. Defendants' use of the New Popcorn Sutton's Trade Dress in connection with their Tennessee white whiskey is likely to cause purchasers and prospective purchasers of the product to believe mistakenly that it is a new Tennessee white whiskey product in the Jack Daniel's line, that it is licensed or authorized by JDPI, and/or that there is a business relationship, affiliation, connection, or association between Defendants and JDPI.

16. JDPI has demanded that Defendants cease all further use of the New Popcorn Sutton's Trade Dress, but Defendants have failed and refused to do so. In the course of prior discussions with Defendants' counsel, Defendants claimed that they were making changes to the New Popcorn Sutton's Trade Dress, but failed to present any such changes to JDPI after several months despite multiple requests from counsel for JDPI that they do so.

### FIRST CLAIM FOR RELIEF
### (Infringement of Federally-Registered Trademarks)

17. JDPI repeats and realleges the allegations in preceding paragraphs 1-16 as if fully set forth herein.

18. Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Popcorn Sutton's Tennessee white whiskey bearing the New Popcorn Sutton's Trade Dress as aforesaid constitute the use in commerce, on or in connection with Defendants' goods, of reproductions, copies, or colorable imitations of JDPI's federally-

registered trademarks, which use is likely to cause confusion, to cause mistake, or to deceive, in violation of § 32(1) of the United States Trademark Act, 15 U.S.C. § 1114(1).

19. Defendants' willful and deliberate infringement of JDPI's federally-registered trademarks as aforesaid has caused and continues to cause irreparable harm to JDPI.

20. Unless restrained and enjoined by this Court, Defendants will persist in their infringement of JDPI's federally-registered trademarks, thereby causing JDPI further irreparable harm.

21. JDPI has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition in Violation of Federal Law)

22. JDPI repeats and realleges the allegations in preceding paragraphs 1-16 as if fully set forth herein.

23. Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of Popcorn Sutton's Tennessee white whiskey bearing the New Popcorn Sutton's Trade Dress as aforesaid constitute the use in commerce, on or in connection with Defendants' goods, of words, terms, names, symbols, or devices, or combinations thereof, and false designations of origin, and false or misleading descriptions or representations of fact, that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with JDPI, and/or as to the origin of Defendants' goods and commercial activities with, or their sponsorship or approval by, JDPI, in violation of § 43(a)(1)(A) of the United States Trademark Act, 15 U.S.C. § 1125(a)(1)(A).

24. Defendants' willful and deliberate unfair competition as aforesaid has caused and continues to cause irreparable harm to JDPI.

25. Unless restrained and enjoined by this Court, Defendants will persist in their unfair competition, thereby causing JDPI further irreparable harm.

26. JDPI has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

**(Trademark Infringement and Unfair Competition in Violation of Tennessee State Law)**

27. JDPI repeats and realleges the allegations in preceding paragraphs 1-16 as if fully set forth herein.

28. This claim arises under Tennessee Code Annotated § 47-25-512 and the common law of Tennessee and is to remedy acts of trademark infringement, unfair competition, and misappropriation.

29. By its actions as described herein, Defendants intend to pass off and palm off their goods as those offered by, approved by, sponsored by or affiliated with JDPI.

30. Defendants' unlawful activities constitute trademark infringement, unfair competition and misappropriation as proscribed by common law and statute.

31. As a result of Defendants' unfair competition, JDPI has suffered and will continue to suffer irreparable harm for which JDPI has no adequate remedy at law.

32. JDPI is entitled to any and all remedies available under Tennessee law for unfair competition, including damages in an amount to be proved at trial, as well as preliminary and permanent injunctive relief.

33. Defendants' acts of trademark infringement, unfair competition and misappropriation have caused JDPI to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

34. Defendants have engaged and continue to engage in this activity knowingly and willfully, so as to justify the assessment of increased and punitive damages against it, in an amount to be determined at the time of trial.

35. Defendants' acts of trademark infringement, unfair competition and misappropriation, unless enjoined by this Court, will continue to cause JDPI to sustain irreparable damage, loss, and injury, for which JDPI has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### (Deceptive Trade Practices And Fraudulent Misrepresentation)

36. JDPI repeats and realleges each and every allegation contained in paragraphs 1 through 16 of this Complaint as if fully set forth herein.

37. Defendants have and are engaged in acts and practices that constitute violation of the prohibition against deceptive trade practices found at Tennessee Code Ann. §47-18-104 et. seq.

38. The use of JDPI's marks and the Jack Daniels Trade Dress by Defendants creates the unreasonable risk that consumers will conclude that there exists some affiliation, connection, or association between and among JDPI and Defendants.

39. The natural and probable effect of Defendants' use of JDPI's marks and the Jack Daniel's Trade Dress in the manner alleged is to enable Defendant to deceive and confuse the public.

40. Defendants' use of JDPI's marks and the Jack Daniel's Trade Dress in the manner alleged constitutes deceptive trade practices of the type prohibited by Tennessee Code Ann. §47-18-104 et. seq.

41. Defendants had actual and constructive knowledge of JDPI's rights at the time they decided to continue to use JDPI's intellectual property in connection with the marketing of

whiskey, despite having received JDPI's cease and desist letter. Thus, Defendants willfully and deliberately infringed and violated JDPI's rights.

42. Upon information and belief, Defendants' unfair business practices are of a recurring nature and are harmful to the consumers and the public at large, as well as to JDPI. These practices constitute unlawful, unfair, fraudulent and deceptive business practices and unfair, deceptive, untrue and misleading advertising. Unless enjoined by this Court, Defendants will continue these acts, thereby causing JDPI further immediate and irreparable damage.

43. JDPI is without an adequate remedy at law because Defendants' acts as set forth herein are causing great and irreparable damage to JDPI and will continue to damage JDPI unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

44. JDPI hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff JDPI prays for a judgment as follows:

1. That defendants J&M and Distilling, and their respective officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, or any of them, who receive actual notice of the injunctions prayed for herein by personal service or otherwise, be preliminarily and then permanently restrained and enjoined from:

(a) Manufacturing, producing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing Popcorn Sutton's Tennessee white whiskey bearing the New Popcorn Sutton's Trade Dress depicted in **Exhibit 7** attached hereto;

(b) Manufacturing, producing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing any other alcoholic beverage bearing the elements of the New

Popcorn Sutton's Trade Dress, or any other copy, reproduction, or colorable imitation of JDPI's registered trademarks and the Jack Daniel's Trade Dress, or any mark or trade dress that is confusingly similar thereto; and

(c) Doing any other act or thing that is likely to cause persons to believe that Defendants' goods or commercial activities originate with, or are licensed, sponsored, or authorized by, JDPI;

2. That Defendants be ordered, pursuant to 15 U.S.C. § 1116, to file with the Court and to serve on counsel for JDPI, within 30 days after the entry of judgment herein, a written report under oath setting forth in detail the manner in which they have complied with the injunction ordered by the Court;

3. That Defendants be ordered, pursuant to 15 U.S.C. § 1118, to deliver up to the Court for destruction or other disposition all labels, signs, prints, packages, wrappers, receptacles, and advertisements and promotional materials bearing the New Popcorn Sutton's Trade Dress, and all plates, molds, matrices, electronic files, and other means of making the same;

4. That Defendants be ordered, jointly and severally and pursuant to 15 U.S.C. § 1117(a) and Tennessee law, to pay to JDPI all of their profits from the sale of Popcorn Sutton's Tennessee white whiskey bearing the New Popcorn Sutton's Trade Dress, and that such profits be enhanced on the basis of their willful infringement of JDPI's federally-registered marks and willful unfair competition;

5. That Defendants be ordered, jointly and severally and pursuant to 15 U.S.C. § 1117(a) and Tennessee law, to pay to JDPI all damages sustained by JDPI as a result of their

infringement of JDPI's federally-registered marks and unfair competition, and that such award be trebled on the basis of their willful infringement and willful unfair competition;

6. That Defendants be ordered, jointly and severally and pursuant to 15 U.S.C. § 1117(a), to pay to JDPI its attorneys' fees and the costs and expenses of this action;

7. That JDPI be awarded pre-judgment and post-judgment interest; and

8. That JDPI be granted such other and further relief as the Court may deem just and proper.

Respectfully submitted,

BASS, BERRY & SIMS, PLC

Dated: October 18, 2013

*[signature]*

Paige Waldrop Mills
150 3RD Ave. S
Suite 2800
Nashville, Tennessee 37201
Telephone (direct): (615) 742-7770
Facsimile: (615) 742-0429
E-mail: pmills@bassberry.com

and

Christopher C. Larkin
Seyfarth Shaw LLP
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
Telephone (direct): (310) 201-5289
Facsimile: (310) 201-5219
E-mail: clarkin@seyfarth.com

*ATTORNEYS FOR PLAINTIFF*
*JACK DANIEL'S PROPERTIES, INC.*

12476401.1